UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
LLOYD HAYNES,

             Plaintiff,

      - against -

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, NEW YORK
CITY HEALTH AND HOSPITALS CORPORATION,
NEW YORK CITY DEPARTMENT OF CORRECTION
COMMISSIONER CYNTHIA BRANN, MANHATTAN
DETENTION COMPLEX WARDEN RALEEM MOSES,
MANHATTAN DETENTION COMPLEX CAPTAIN
WINWICK, MANHATTAN DETENTION COMPLEX
CAPTAIN LEE, MANHATTAN DETENTION
COMPLEX CAPTAIN AVIN, et al.,

             Defendants.
--------------------------------------X

**MEMORANDUM AND ORDER**

19 Civ. 1925 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Lloyd Haynes ("plaintiff") brought this action pursuant to 42 U.S.C. § 1983 against the City of New York (the "City"), the New York City Department of Correction ("DOC"),[1] the New York City Health and Hospitals Corporation ("HHC"), DOC Commissioner Cynthia Brann ("Commissioner Brann"), Manhattan Detention Complex ("MDC") Warden Raleem Moses, Bellevue Hospital Prison Ward ("BPW") Deputy Warden John Doe, North Infirmary Command

---

[1] "It is well established that New York City agencies, such as the [DOC], are not suable entities." Cuadrado v. New York City Dep't of Corr., No. 08 Civ. 3026 (PAC), 2009 WL 1033268, at *2 (S.D.N.Y. Apr. 16, 2009). Indeed, the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter Ch. 16 § 396. Plaintiff's claims against DOC are accordingly dismissed.

("NIC") Warden John Doe,[2] MDC Captain Winwick, MDC Captain Lee, MDC Captain Avin, DOC Officers John/Jane Does #1-25,[3] and no fewer than 213 individually named healthcare workers (the "Defendant Healthcare Workers"),[4] (collectively, "defendants"), in connection with defendants' purported failures to adequately and timely treat plaintiff's Hirschsprung's disease.[5]

Before the Court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, defendants' motion is granted. Plaintiff's state law claims are dismissed without prejudice to their potential refiling in state court.

---

[2] Commissioner Brann, MDC Warden Moses, BPW Warden Doe and NIC Warden Doe are referred to collectively in the first amended complaint (the "FAC" or the "amended complaint") and herein as the "Senior Officials." FAC ¶ 36.

[3] DOC Officers John/Jane Does #1-25 are described in the amended complaint as "DOC officers including, but not limited to, assistant deputy wardens, captains, and correction officers . . . who participated in and/or had knowledge of and failed to protect Plaintiff from and/or intervene in the denial of timely and adequate medical care[.]" FAC ¶ 39.

[4] The 213 Defendant Healthcare Workers, which appear to include every medical provider listed in plaintiff's 1000+ page medical record, are described in the FAC as "the site directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff employed by the City and/or HHC who were assigned to MDC, NIC, and BPW on the subject dates and were responsible for the provision of appropriate medical care to patients at MDC, NIC, and BPW[.]" FAC ¶ 34.

[5] "Hirschsprung's disease is a condition that affects the large intestine (colon) and causes problems with passing stool." See "Hirschsprung's disease," Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/hirschsprungs-disease/multimedia/hirschsprungs-disease/img-20006784.

I.   **Background**[6]

Plaintiff was arrested and taken to the MDC on January 31, 2018.  FAC ¶ 46.  On February 1, 2018, plaintiff was evaluated by "MDC's Defendant Healthcare Workers" as part of an initial medical examination.[7]  FAC ¶ 47.  MDC's Defendant Healthcare Workers purportedly were advised of plaintiff's Hirschsprung's disease, which, according to plaintiff, "requires an ileostomy bag and constant maintaining, cleaning and monitoring of same."  FAC ¶ 47.  Specifically, plaintiff claims to have told MDC's Defendant Healthcare Workers that it was "medically necessary to change his ileostomy bag twice per day to prevent fecal matter from overflowing."  FAC ¶ 49.  Following plaintiff's initial medical examination, however, MDC's Defendant Healthcare Workers, "including but not limited to Defendants MARIANNA USTIAK, RN and/or LANDIS BARNES, MD," purportedly failed to change plaintiff's ileostomy bag until approximately February 6, 2018.  FAC ¶ 50.  Plaintiff alleges that by February 6, 2018, his ileostomy bag "had leaked fecal matter around the stomach area," causing plaintiff to develop a painful skin condition around the ileostomy site.  FAC

---

[6] The following facts are drawn from the FAC and are assumed true for purposes of resolving the instant motion.  See Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017).

[7] The FAC does not expressly define "MDC's Defendant Healthcare Workers." Elsewhere in the FAC, however, 23 of the 200+ Defendant Healthcare Workers are alleged to have treated plaintiff during the time period at issue.  See FAC ¶ 69 (listing by name each of the Defendant Healthcare Workers alleged to have treated plaintiff while he was at MDC between February 1, 2018 and June 5, 2018).

¶ 50.  According to plaintiff, the failure of MDC's Defendant Healthcare Workers to change his ileostomy bag for five days was in direct contravention of "the medical standard,"[8] which plaintiff claims is to change an ileostomy bag twice per day.  FAC ¶ 65.

Plaintiff alleges that MDC ran out of ileostomy supplies on at least four occasions between February 6, 2018 and May 9, 2018, FAC ¶ 65, resulting in continued pain and worsening of his skin condition, FAC ¶ 58.  Between February 6, 2018 and February 18, 2018, when MDC purportedly lacked a sufficient supply of ileostomy bags, plaintiff claims to have repeatedly asked MDC Captain Winwick if his mother could bring him the needed supplies.  FAC ¶ 60. Plaintiff alleges that Captain Winwick, after assuring plaintiff that she would speak to the "Assistant Warden" about the issue,[9] repeatedly ignored plaintiff's requests.  FAC ¶ 60.  While the FAC alleges that plaintiff's concerns were never addressed by Captain Winwick and the Assistant Warden, plaintiff's mother allegedly was permitted to bring plaintiff one week's worth of ileostomy supplies on or about February 19, 2018.  FAC ¶¶ 60, 61.  At that point,

_____

[8] The Court notes that allegations regarding prevailing medical standards generally are not considered at the motion to dismiss stage.  See, e.g., Knight v. Koenigsmann, No. 18 Civ. 7172 (KMK), 2019 WL 2615977, at *8 (S.D.N.Y. June 26, 2019) (argument that a catheter distribution policy complied with the "the current standard of care" was "inappropriate at the motion-to-dismiss stage"); cf. Vassallo v. City of New York, No. 15 Civ. 7125 (KPF), 2016 WL 6902478, at *2 n.2 (S.D.N.Y. Nov. 22, 2016) (detailed medical information, including "the appropriate blood sugar levels for a 'well-managed' diabetic" is "usually presented and considered at the summary judgment stage, not on the pleadings").

[9] The "Assistant Warden" is not named as a defendant in the case caption and it is unclear to whom the "Assistant Warden" is intended to refer.

however, plaintiff alleges that he "had already developed a severe skin condition as a result of the fecal matter overflow."  FAC ¶ 61.  While plaintiff allegedly was referred to BPW on February 21, 2018 for an ostomy evaluation and to have his skin condition examined, "Defendant Officers and Defendant Healthcare Workers"[10] repeatedly cancelled plaintiff's appointments "for no legitimate or lawful reason."  FAC ¶ 64.  While "Defendants" purportedly began changing plaintiff's ileostomy bag approximately two times per week beginning on or about March 13, 2018, plaintiff alleges that twice per week was still too infrequent and that his requests to have his ileostomy bag changed twice per day continued to be ignored.  FAC ¶¶ 61, 65.

Plaintiff alleges that he was examined at MDC in early May 2018 by defendant Rhodina Williams, MD, who prescribed plaintiff an antifungal cream for plaintiff's skin condition and requested that an appointment be scheduled for plaintiff to see a specialist at BPW on May 15, 2018.  FAC ¶ 66.  However, "Defendant Officers and/or Defendant Healthcare Workers" purportedly failed to take plaintiff to that appointment and to several other appointments scheduled between February 2018 and June 5, 2018, causing his skin condition to continue to worsen.  See FAC ¶¶ 66, 68, 69.  While

---

[10] As discussed in greater detail infra, plaintiff refers throughout the amended complaint to actions taken by "Defendants" and "Defendant Officers and Defendant Healthcare Workers," without identifying which of the many named defendants were actually involved in the conduct at issue.

plaintiff was taken for an evaluation at BPW on June 5, 2018, plaintiff alleges that he was examined by interns and residents "with little to no experience regarding [plaintiff's] condition." FAC ¶ 71.  Specifically, defendants Gloria Ihenacho, MD, Robert Reader, MD, "and/or" Patricio B. Lynn, MD, allegedly attempted to "push [plaintiff's] mucous fistula back into his stomach with his/her hands . . . caus[ing] Plaintiff extreme pain and discomfort." FAC ¶ 71.  Following that evaluation, plaintiff was discharged and prescribed a paste for his skin condition that purportedly caused "additional scabs and lesions." FAC ¶¶ 71, 74. While plaintiff alleges that he was supposed to have an immediate follow up appointment with a gastroenterologist, "Defendants" repeatedly failed to take him to that appointment. FAC ¶¶ 75, 76. Plaintiff alleges that his skin condition continued to deteriorate "as a result of not being examined by a skin specialist." FAC ¶ 73, 77.  While plaintiff was evaluated by "non-specialist" Todd Cowdery, MD on or about September 6, 2018, Dr. Cowdery purportedly misdiagnosed plaintiff's skin condition and prescribed antibiotics that were ineffective. FAC ¶ 77.  Although Dr. Cowdery allegedly arranged for plaintiff to see a gastroenterologist and a wound care specialist at BPW on September 11, 2018, plaintiff alleges that that appointment, like the others before it, "was cancelled for no legitimate purpose." FAC ¶¶ 77-80.

On or about October 5, 2018, plaintiff was taken to BPW for an evaluation.  FAC ¶ 81.  Upon his arrival, however, BPW did not have any ileostomy bags to replace the one plaintiff was wearing, purportedly causing leakage of fecal matter that worsened the skin condition around the ileostomy site.  FAC ¶ 81.  While plaintiff was brought back to BPW on or about October 17, 2018 as a result of his worsening skin condition, "MDC's personnel failed to deliver Plaintiff to BPW on time for his appointment," causing him to miss an appointment with a dermatologist.  FAC ¶ 83.  At that point plaintiff's skin condition allegedly was so severe that he needed to be admitted to BPW.  While at BPW, a dermatologist diagnosed his skin condition as a rash caused by the failure of "Defendants" to prevent the fecal matter from spreading around the ileostomy site.  FAC ¶ 84.  The dermatologist prescribed plaintiff a medicated cream to be applied hourly.  FAC ¶ 85.  Following his discharge from BPW on October 20, 2018, "Defendant Officers at MDC and Defendant Healthcare Workers at MDC" purportedly failed to give plaintiff the prescribed cream and failed to take plaintiff back to BPW for a scheduled follow up appointment.  FAC ¶¶ 87, 88.

Plaintiff was transferred to North Infirmary Command ("NIC") on December 25, 2018.  FAC ¶ 93.  However, because "the officers at MDC and Defendant Healthcare Workers at MDC wholly failed to communicate Plaintiff's medically necessary needs to the NIC upon his transfer," FAC ¶ 94, NIC did not have any ileostomy bags upon

his arrival, FAC ¶ 93.  Plaintiff alleges that between his transfer to NIC until on or about February 12, 2019, he was "inadequately treated and/or assessed" by "Defendant Healthcare Workers at NIC." FAC ¶ 97.  Specifically, plaintiff alleges that the inadequate treatment at NIC "caused [him] to have stool passing through his anus, requiring a disimpaction procedure, exposing him to risk of further infections and blood leaking from his rectum."  FAC ¶ 96.

Plaintiff was readmitted to BPW on February 12, 2019 as a result of the "excruciating pain" caused by the NIC Defendants' failure to procure needed supplies and adequately treat his skin condition.  FAC ¶ 98.  A CAT scan performed at BPW revealed "a large fecal and mucus blockage in Plaintiff's intestines" for which plaintiff was given enemas daily for a four day period.  FAC ¶ 199.  Plaintiff alleges that from February 12, 2019 until his discharge from BPW approximately five days later, he was "inadequately treated and/or assessed" by certain additional Defendant Healthcare Workers.  FAC ¶ 102.  Following his discharge from BPW plaintiff was transferred back to NIC, where he purports to have again been "inadequately treated and/or assessed."  FAC ¶ 105.  Plaintiff alleges that due to his condition having worsened, he was readmitted to BPW on or about March 14, 2019 through April

18, 2019, where the inadequate treatment purportedly persisted. FAC ¶ 105.[11]

Plaintiff alleges that, to date, his skin condition still has not been properly diagnosed and that he continues to suffer from discomfort and "excruciating" pain.  See FAC ¶ 106.

## II.  Procedural History

Plaintiff filed the original complaint in this case on February 28, 2019.  ECF No. 1.  In response, defendants filed a pre-motion letter asserting, inter alia, that the complaint relied on impermissible group pleading and failed to allege facts sufficient to establish the personal involvement of each defendant.  See ECF No. 37 at 2.  During a pre-motion conference, the Court directed plaintiff to obtain his medical records and to serve interrogatories on defendants so that plaintiff would be able to correct the deficiencies in an amended complaint.

Plaintiff's subsequently filed an amended complaint, which is the presently operative complaint in this case, named over 200 additional medical providers as defendants and asserts the following causes of action: (1) deliberate indifference to his medical needs pursuant to 42 U.S.C. § 1983 against all defendants;

---

[11] Certain additional facts, which are not alleged in the FAC, are included in plaintiff's opposition to defendants' motion to dismiss.  For example, plaintiff states in opposition that he received a colon disimpaction on March 19, 2019 and had a surgical disimpaction on April 5, 2019.  Plaintiff also claims that he was discharged from BPW and transferred to the NIC on May 9, 2019, and that he was transferred to Midstate Correctional Facility on May 21, 2019.  See ECF No. 63 at 7, 12, 16.

(2) deliberate indifference resulting from an official policy or custom under Monell against the City and HHC; (3) conspiracy pursuant to 42 U.S.C. § 1983 against the individual defendants; and (4) six state law causes of action for various forms of negligence, including medical malpractice.[12]

Defendants have moved to dismiss the amended complaint in its entirety on the grounds that plaintiff continues to rely on impermissible group pleading and that plaintiff has failed to show, in any event, that the purported inadequacies in plaintiff's medical treatment rise to the level of deliberate indifference. Defendants further argue that plaintiff has failed to demonstrate that he suffered a constitutional deprivation as a result of an official policy or custom, as is required to state a claim for liability under Monell, or that there was any meeting of the minds among the defendants of the kind necessary to adequately plead a claim for conspiracy. See ECF No. 57.

Because the Court agrees in substantial part with defendants' analysis, and for the additional reasons set forth below, defendants' motion is granted in its entirety.

---

[12] The state law causes of action include: (1) medical malpractice; (2) negligence; (3) negligent hiring, training supervision and retention; (4) neglect and failure to provide medical treatment; (5) neglect and failure to protect; and (6) prima facie tort. See FAC ¶¶ 168-220.

## III. **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), the non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[ ] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

### A.   **Materials Considered**

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). For a document to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'" DeLuca v.

AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). For example, when ruling on a motion to dismiss for failure to state a claim, a court may consider documents that were not attached as exhibits to the complaint where the plaintiff relied upon said documents in bringing suit. See Cortec Indus., Inc. v. Sum Holding LP, 949 F.2d 42, 48 (2d Cir. 1991); see also id. ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

The Court finds here that plaintiff's medical records, which were filed as sealed exhibits to defendants' motion to dismiss, see ECF No. 60, may be considered in ruling on defendants' motion. As an initial matter, there is no dispute that plaintiff obtained his full medical record prior to filing the amended complaint. Indeed, plaintiff appears to have relied on his medical record in

naming as additional defendants the 200+ Defendant Healthcare Workers listed therein.[13]   The Court also informed the parties during a pre-motion conference that the medical records could be referenced in the parties' submissions.   That plaintiff was in possession of his medical records prior to filing the amended complaint and was on notice of the possibility of their being considered eliminates any harm that otherwise might have resulted from their consideration.   See Chambers, 282 F.3d at 153 ("[T]he harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered").[14]

## IV.  **Discussion**

The Court notes at the outset that the amended complaint relies heavily on precisely the sort of "group pleading" that the Second Circuit has held fails to comply with the requirements of Rule 8.   See Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) ("Although Fed. R. Civ. P. 8 does not demand that a

---

[13] Plaintiff acknowledges in his opposition that "the only individuals who Plaintiff is aware of are those that made notations in his medical records." ECF No. 63 at 21.

[14] While plaintiff claims that the medical records "do not show the whole picture of Plaintiff's grievances," ECF No. 63 at 14, he does not dispute the medical records' authenticity or accuracy.  Cf. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.").   To the contrary, plaintiff maintains that the medical records "collaborate [sic] [his] allegations on several aspects," and his opposition to defendants' motion to dismiss quotes extensively from the medical records in support of his claims.  See ECF No. 63 at 15.

complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests'") (quoting <u>Ferro v. Ry. Exp. Agency, Inc.</u>, 296 F.2d 847, 851 (2d Cir. 1961)).  Indeed, plaintiff's fifty six page amended complaint -- hardly a "model of clarity" -- refers on numerous occasions to actions purportedly taken by various subsets of defendants (e.g., groups of individuals referred to collectively as "Defendant Healthcare Workers," "MDC Defendant Healthcare Workers," and "Defendant Officers"), failing in nearly all instances to identify any specific conduct by any particular defendant.  Elsewhere, the FAC asserts claims against long lists of individual defendants that, while identified by name, remain wholly undifferentiated in terms of their conduct.[15]

For example, plaintiff alleges that between December 25, 2018 and February 12, 2019, he was "inadequately treated and/or assessed" by multiple Defendant Healthcare Workers at the NIC. <u>See</u> FAC ¶ 97 (listing thirty-four of the Defendant Healthcare Workers by name).  While plaintiff alleges generally that the failure of those defendants "to provide [him] with adequate medical care" exposed him to, <u>inter alia</u>, "risk of further infections,"

---

[15]  Where individual defendants are referenced by name, internal inconsistencies abound.  <u>Compare, e.g.</u>, FAC ¶ 69 (describing defendant Robert Reader, MD as one of the "MDC Defendant Healthcare Workers") <u>with</u> FAC ¶ 70 (describing Dr. Reader as part of a group of "interns and residents of BPW").

see FAC ¶ 96, plaintiff fails to allege how or when any of those defendants were involved in depriving him of adequate treatment. Plaintiff goes on to allege, in similarly vague terms, that he continued to be "inadequately treated and/or assessed" by various other "Defendant Healthcare Workers" throughout the remainder of the relevant period.  See, e.g., FAC ¶ 102 (from February 12, 2019 to February 16, 2019, plaintiff was "inadequately treated and/or assessed" by forty Defendant Healthcare Workers listed by name); FAC ¶ 103 (from February 16, 2019 to March 13, 2019, plaintiff was "inadequately treated and/or assessed" by twenty-three Defendant Healthcare Workers listed by name); FAC ¶ 105 (from March 14, 2019 to April 18, 2019 plaintiff was "inadequately treated and/or assessed" by eighty-seven Defendant Healthcare Workers listed by name).  In each of these instances and in numerous others not reproduced here, plaintiff fails to plead a single factual allegation differentiating among the defendants in terms of their involvement in plaintiff's medical treatment generally, much less in the constitutional violations alleged.

While plaintiff already was afforded an opportunity to amend in order to address the group pleading deficiencies of his initial complaint, it apparently warrants repeating that a complaint fails to meet the requirement of Rule 8(a) where, as here, the allegations "lump[ ] . . . the defendants together in each claim and provid[e] no factual basis to distinguish their

conduct." Atuahene, 10 F. App'x. at 34; see also Nesbeth v. New
York City Mgmt. LLC, No. 17 Civ. 8650 (JGK), 2019 WL 110953, at *3
(S.D.N.Y. Jan. 4, 2019) ("It is well-established in this Circuit
that . . . 'Rule 8(a) is violated where a plaintiff, by engaging
in group pleading, fails to give each defendant fair notice of the
claims against it'") (quoting Canon U.S.A., Inc. v. F & E Trading
LLC, No. 215 Civ. 6015 (DRH), 2017 WL 4357339, at *7 (E.D.N.Y.
Sept. 29, 2017)).

While the Court declines to find that dismissal under Rule 8
is warranted,[16] plaintiff's counsel's reliance on group pleading
has placed an inexcusable burden on defendants and this Court.
See Cannon v. NYS Comm'r of Soc. Servs., No. 19 Civ. 6493 (CM),
2019 WL 3743975, at *2 (S.D.N.Y. Aug. 7, 2019) (failure to comply
with Rule 8 presents "far too [heavy a] burden in terms of
defendants' duty to shape a comprehensive defense and provides no
meaningful basis for the Court to assess the sufficiency of [a
plaintiff's] claims") (quoting Jackson v. Onondaga Cty., 549 F.
Supp. 2d 204, 212 (N.D.N.Y. 2008)) (alteration in original); cf.
McClean v. Cty. of Westchester, No. 17 Civ. 4492 (CS), 2018 WL
6329420, at *6 (S.D.N.Y. Dec. 3, 2018) ("Were Plaintiff pro se and
entitled to 'special solicitude,' the hours spent unraveling his

---

[16] "Dismissal under Rule 8 is 'usually reserved for those cases in which
the complaint is so confused, ambiguous, vague, or otherwise unintelligible
that its true substance, if any, is well disguised.'" Warner Bros. Entm't Inc.
v. Ideal World Direct, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007) (quoting
Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)).

claims and arguments would have been appropriate.  But the Court
should not have to make such efforts when the plaintiff is
represented by counsel") (citation omitted).  Plaintiff's counsel
would be well advised to review the requirements of Rule 8 prior
to making any additional filings in this Court.

With the foregoing deficiencies in mind -- and with the
numerous difficulties arising therefrom never far from view -- the
Court turns to plaintiff's first cause of action, asserted against
all defendants, for deliberate indifference to plaintiff's serious
medical needs pursuant to 42 U.S.C. § 1983.

### A.    Deliberate Indifference to Serious Medical Need

As a preliminary matter, the amended complaint does not
address explicitly whether plaintiff was a pretrial or post-trial
detainee at the time of the events alleged.  This is relevant
because deliberate indifference claims brought by pretrial
detainees are governed by the Fourteenth Amendment Due Process
Clause rather than the Eighth Amendment Cruel and Unusual
Punishments Clause,[17] and because the analysis differs depending
upon the constitutional basis for the claim.

---

[17] Deliberate indifference claims brought by pretrial detainees "are
governed by the Due Process Clause of the Fourteenth Amendment, rather than the
Cruel and Unusual Punishments Clause of the Eighth Amendment . . . because
[p]retrial detainees have not been convicted of a crime and thus may not be
punished in any manner -- neither cruelly and unusually nor otherwise." Darnell
v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (alteration in original) (internal
quotation marks omitted).

"To state a claim for deliberate indifference to serious medical needs pursuant to 42 U.S.C. § 1983, a detainee must satisfy a two-pronged test: First, the 'alleged deprivation of adequate medical care must be sufficiently serious.'" Davis v. McCready, No. 14 Civ. 6405 (GHW), 2017 WL 4803918, at *4 (S.D.N.Y. Oct. 23, 2017) (quoting Lloyd v. City of New York, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017)). "Second, the defendant must act with a 'sufficiently culpable state of mind.'" McCready, 2017 WL 4803918, at *4 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). While it used to be the case in this circuit that both prongs of the deliberate indifference test were analyzed under the same standard regardless of whether the claim was brought under the Eighth or Fourteenth Amendment, the Second Circuit held in Darnell v. Pineiro that the second prong of the analysis -- referred to as the *mens rea* prong -- differs depending on whether the inmate is a convicted prisoner or a pretrial detainee. 849 F.3d at 35. Specifically:

> Deliberate indifference under the Eighth Amendment . . . means that a prison official 'appreciate[d] the risk to which a prisoner was subjected.' In contrast, after Darnell, a plaintiff suing under the Fourteenth Amendment is required to show only that the prison official acted with objective recklessness, or that the defendant 'knew, or should have known' that 'an excessive risk to health or safety' would result.

Grimmett v. Corizon Med. Assocs. of New York, No. 15 Civ. 7351 (JPO), 2017 WL 2274485, at *4 (S.D.N.Y. May 24, 2017) (quoting

*Darnell*, 849 F.3d at 35) (citations omitted).[18]   Stated differently, whereas the *mens rea* prong of the deliberate indifference analysis previously was assessed subjectively under both the Eighth and Fourteenth Amendments (i.e., an assessment of whether the defendant had actual knowledge that his conduct created an excessive risk of harm), the second prong, post-*Darnell*, may be assessed objectively (i.e., an assessment of whether the defendant *knew or should have known* of an excessive risk of harm) if the claim is brought by a pre-trial detainee.   As courts in this district have acknowledged, the post-*Darnell* analysis applicable in cases involving pre-trial detainees will often prove challenging at the motion to dismiss stage.   See, e.g., McCready, 283 F. Supp. 3d at 120 ("In determining whether [a pre-trial detainee] has pleaded sufficient facts to plausibly suggest that the *mens rea* prong is satisfied, following Darnell, the Court is faced with a difficult task.   It is called upon to determine, without the benefit of medical expertise, whether an objectively reasonable person in [the defendant's] position would have known, or should have known, that [the defendant's] actions or omissions posed an excessive risk of harm to [the plaintiff].").

---

[18]   While Darnell involved allegations of deliberate indifference to unconstitutional conditions of confinement and did not explicitly reference deliberate indifference to a detainee's serious medical needs, "[t]he reasoning of Darnell applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment." Lloyd, 246 F. Supp. 3d at 718.

Here, notwithstanding the reliance by plaintiff's counsel on case law applying the standard applicable to convicted prisoners under the Eighth Amendment, see ECF No. 63 at 18-20,[19] the Court suspects -- and will assume for purposes of the pending motion -- that plaintiff was a pretrial detainee at the time of the events alleged.[20]  See Knight v. City of New York, No. 19 Civ. 04022 (GHW), 2020 WL 2115411, at *5 (S.D.N.Y. May 1, 2020) ("Because it must draw all reasonable inferences in Plaintiff's favor, the Court will assume for purposes of this motion that Plaintiff was a pretrial detainee at the time Defendants allegedly violated his constitutional rights"); cf. Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) ("[A]n unconvicted detainee's rights are at least as great as those of a convicted prisoner.").

Having resolved the foregoing, the Court briefly reviews the two prongs of the deliberate indifference test (i.e., the "objective prong" and the "mens rea prong"), before evaluating

---

[19] Plaintiff appears to have presumed that a claim for deliberate indifference to a serious medical condition is analyzed under the same standard regardless of whether the claim is brought under the Eighth or Fourteenth Amendment.  See ECF No. 63 at 18 n.2 ("[t]he Eighth Amendment analysis applies to claims of pretrial detainees pursuant to the Fourteenth Amendment").

[20] Among other things, the amended complaint alleges that plaintiff was taken to MDC on the day of his arrest and that he was transferred to a state facility after the events in question.  Cf. Ferguson v. Cai, No. 11 Civ. 6181 (PAE), 2012 WL 2865474, at *3 (S.D.N.Y. July 12, 2012) ("Although plaintiff's pleadings do not identify whether he was a pre-trial or post-trial detainee at the time of the incident -- and, therefore, whether the violation he claims is of the Fourteenth or Eighth Amendment -- the Court surmises that he was a pre-trial detainee because he was moved from Rikers Island to a New York State correctional facility sometime after the incident.").

plaintiff's deliberate indifference claim as against the various categories of individual defendants.

### 1. Objective Prong[21]

The first prong of the deliberate indifference test entails two inquiries: "whether the prisoner was actually deprived of adequate medical care," and, if so, "whether the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006). Because a prison official is required only to provide "reasonable care," id. at 279, a detainee is deprived of adequate medical care only insofar as prison officials, including prison medical personnel, have failed "'to take reasonable measures' in response to a medical condition," id. (quoting Farmer, 511 U.S. at 847). The second inquiry (i.e., whether the inadequacy is sufficiently serious), "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. at 280. If the conduct involves an alleged "failure to provide *any* treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. (emphasis added). However, where the offending conduct is the "medical treatment

---

[21] The analysis under the objective prong of the deliberate indifference test remains the same, post-Darnell, for pretrial detainees and convicted prisoners. See Darnell 849 F.3d at 30.

given, the seriousness inquiry is narrower." <u>Id.</u> "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" <u>Id.</u> (quoting <u>Smith v. Carpenter</u>, 316 F.3d 178, 185 (2d Cir. 2003)) (emphasis omitted).

Here, in an apparent effort to dismiss defendants' assessment that plaintiff's claim "is not for a failure to provide treatment but instead a claim for delay or inadequacy of treatment," ECF No. 63 at 23, plaintiff insists he "is not alleging that there were short-term delays and inadequacies of treatment surrounded by otherwise acceptable care, but rather that there were short-term provisions of inadequate care surrounded by otherwise non-existent and/or cursory care," ECF No. 63 at 23-24. However, this characterization of plaintiff's deliberate indifference claim -- perhaps because it was not originally tailored to the facts and circumstances of plaintiff's case[22] -- is belied by plaintiff's

_____

[22] Plaintiff's counsel appears to have copied this line verbatim (along with quite a few others throughout its brief) from a memorandum of law filed by another law firm in an unrelated case. <u>See</u> Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Complaint, <u>Vassallo v. City of New York</u>, No. 15 Civ. 7125 (KPF), 2016 WL 6902478 (S.D.N.Y. Nov. 22, 2016), ECF No. 56 at 21 ("Plaintiff is not alleging that there were short-term delays and inadequacies of treatment surrounded by otherwise acceptable care, but rather that there were short-term provisions of inadequate care surrounded by otherwise non-existent and/or cursory care."). Plaintiff's opposition contains numerous other examples of lines copied verbatim from that filing.

To the extent verbatim use of another's briefing language is not in itself a <i>per se</i> violation of ABA Model Rule 8.4(c), <u>see, e.g.,</u> NYC Bar Formal Opinion

1000+ page medical record documenting a course of treatment that, however suboptimal it may have been, cannot credibly be described as "non-existent and/or cursory."  ECF No. 63 at 23-24.  To be sure, during the time period in question plaintiff was treated by medical professionals on dozens of occasions for, inter alia, dressing changes, wound and colostomy care, and dermatology and gastroenterology consults, and was prescribed numerous topical treatments and medications for his skin condition and pain.  See ECF No. 58, Exs. B, C.

Accordingly, while the Court does not question the severity of plaintiff's Hirschsprung's disease, the Court has no trouble concluding that the appropriate focus when evaluating the objective prong of the deliberate analysis is "the particular risk of harm faced by [plaintiff] due to the challenged deprivation of care, rather than the severity of the [his] underlying medical condition."  Smith, 316 F.3d at 186.

### 2.  Mens Rea Prong

"Under the second prong of the deliberate indifference analysis, a plaintiff must show that a defendant acted with a

---

2018-3: Ethical Implications of Plagiarism in Court Filings, the Court strongly cautions plaintiff's counsel against such practice.  Here, not only has it resulted in arguments that are insufficiently specific and thus lacking in their persuasiveness, but it appears to have also resulted in the application of an outdated standard for deliberate indifference claims brought by pre-trial detainees.  See supra at 20, n.19. Indeed, assuming the Court is correct that plaintiff is a pre-trial detainee, plaintiff's counsel's reliance on stock language applying the pre-Darnell deliberate indifference standard was incorrect in a manner potentially detrimental to his client.

sufficiently culpable state of mind." Grimmett, 2017 WL 2274485, at *4. A pretrial "detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Charles v. Orange Cty., 925 F.3d 73, 87 (2d Cir. 2019) (emphasis in original).

Of course, "not every lapse in medical care is a constitutional wrong," Salahuddin, 467 F.3d at 279, and allegations of negligence generally are insufficient to state a constitutional claim. See, e.g., Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim"); Darnell, 849 F.3d at 36 (Deliberate indifference "requires proof of a *mens rea* greater than mere negligence"). Thus, "the fact that a plaintiff feels that more should have been done for his condition is not a sufficient basis for a deliberate indifference claim." Brown v. McElroy, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001).

*          *          *

While the gravamen of plaintiff's amended complaint is that numerous named and unnamed "defendants" failed to adequately and

timely treat conditions associated with plaintiff's Hirschsprung's disease, plaintiff's claims -- which pertain not to a single incident involving a single defendant but rather to numerous incidents spanning an approximately sixteen month period during which plaintiff was housed at and transferred between multiple facilities -- cannot be singularly characterized or assessed. Thus, for the sake of analytical clarity, the Court separately analyzes plaintiff's deliberate indifference claim insofar as it is alleged against discrete categories of individual defendants (i.e., the Defendant Healthcare Workers, the Senior Officials, MDC Captains Winwick, Avin and Lee, and the John/Jane Doe Officer defendants).[23]

By way of preview, the Court finds that where plaintiff has adequately pleaded the personal involvement of the individual defendants -- and in many instances he has not -- he has failed to adequately plead that those defendants "acted intentionally to impose [his] alleged condition, or recklessly failed to act with reasonable care to mitigate the risk" posed by his condition.

---

[23] Plaintiff has sued all of the individual defendants in their individual and official capacities.  FAC ¶ 127.  However, the official capacity claims are duplicative of plaintiff's claims against the entity defendants.  See Davis v. Stratton, 360 F. App'x 182, 183 (2d Cir. 2010) ("[I]n a suit against a public entity, naming officials of the public entity in their official capacities 'add[s] nothing to the suit'") (quoting Gernetzke v. Kenosha Unified Sch. Dist. No. 1, 274 F.3d 464, 466 (7th Cir. 2001)); Phillips v. Cty. of Orange, 894 F. Supp. 2d 345, 385 at n.35 (S.D.N.Y. 2012) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.").

<u>Darnell</u>, 849 F.3d at 35.  Stated differently, plaintiff has failed to adequately allege that *any* of the individual defendants acted with the requisite deliberate indifference.  The Court accordingly dismisses plaintiff's Section 1983 deliberate indifference claim as to all defendants pursuant to Rule 12(b)(6).

### 3.   Deliberate Indifference Claim against Defendant Healthcare Workers

As noted previously, plaintiff's claims against the 200+ Defendant Healthcare Workers rely almost exclusively on impermissible group-wide allegations.  Plaintiff's deliberate indifference claim as to the Defendant Healthcare Workers must be dismissed at the outset to the extent the amended complaint fails to put them on notice as to the basis for the claim against them. <u>See</u> <u>Leneau v. Ponte</u>, No. 1:16 Civ. 776 (GHW), 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018), <u>appeal dismissed</u> (July 16, 2018) ("[C]omplaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim'") (quoting <u>Adamou v. Cty. of Spotsylvania, Virginia</u>, No. 112 Civ. 07789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016)).

In the several instances in which plaintiff makes specific allegations regarding individually named Defendant Healthcare Workers, the allegations -- though they may in certain instances state a claim for negligence -- fail to rise to the level of

deliberate indifference.  The allegations raised against specific Defendant Healthcare Workers are briefly addressed in turn.

### i.    Marianna Ustiak, RN and Landis Barnes, MD

Plaintiff alleges that following his initial medical examination at MDC, MDC's Defendant Healthcare Workers, "including but not limited to Defendants MARIANNA USTIAK, RN and/or LANDIS BARNES, MD,"[24] purportedly failed to change plaintiff's ileostomy bag until approximately February 6, 2018.  See FAC ¶ 50.  Because of the failure to change plaintiff's ileostomy bag during that period, plaintiff alleges that by February 6, 2018, his ileostomy bag "had leaked fecal matter around the stomach area creating painful lesions and visible bumps on the skin around the ileostomy site."  FAC ¶ 50.  Plaintiff's skin condition allegedly worsened as a result of defendants' failure to ensure he had access to a sufficient amount of ileostomy supplies, as "[e]ach time Defendants failed to provide Plaintiff's ileostomy supplies, his ileostomy bag continued to leak more fecal matter over the very painful lesions[.]"  FAC ¶ 57.  Plaintiff alleges that a dermatologist eventually diagnosed his skin condition as a rash. See FAC ¶ 84.

---

[24] Even here, plaintiff arguably has relied on impermissible group pleading.  See Targum v. Citrin Cooperman & Co., LLP, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *6 (S.D.N.Y. Nov. 19, 2013) (describing the use of "and/or" between the names of defendants as a form of group pleading that "fails to put [each defendant] on notice of the specific allegations against it").

While troubling, these allegations do not rise to the level of deliberate indifference.

With respect to the first prong of the deliberate indifference analysis, the Second Circuit has explained that when evaluating whether delayed or otherwise inadequate treatment is "sufficiently serious," "the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." Smith, 316 F.3d at 187.  While "[t]here is no 'static test' to determine whether a deprivation is sufficiently serious," Darnell, 849 F.3d at 30, "[a] skin rash is generally insufficient to meet the objective requirement of a sufficiently grave and serious condition giving rise to a deliberate indifference claim," Purdie v. City of New York, No. 10 Civ. 5802 (PKC), 2011 WL 1044133, at *3 (S.D.N.Y. Mar. 15, 2011) (collecting examples).  It is also true, however, that "[w]here temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, *or a delay which caused extreme pain* or exacerbated a serious illness." Ferguson, 2012 WL 2865474, at *4 (emphasis added).  Here, because plaintiff has alleged that his skin condition caused him to experience "excruciating" pain, FAC ¶¶ 2, 55, 84, the Court declines to conclude that the harm incurred

due to defendants' failures to change his ileostomy bag was not "sufficiently serious" for purposes of satisfying the first prong of the deliberate indifference analysis.

However, plaintiff has still failed to state a claim for indifference against Defendant Healthcare Workers Marianna Ustiak "and/or" Landis Barnes (or any others not explicitly listed), because plaintiff has failed to allege facts suggesting that any of them "knew or should have known" that a failure to change his ileostomy with greater frequency could pose an "excessive risk" to plaintiff's health.  See Charles, 925 F.3d at 87 ("[A] [pretrial] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health.").  Despite his repeated efforts to do so, plaintiff cannot simply rely on general allegations concerning what he told "MDC's Defendant Healthcare Workers" during his initial evaluation (i.e., regarding it being "medically necessary" to change plaintiff's ileostomy bag twice per day, see ECF No. 63 at 11), in order to impute the requisite awareness onto *all* of the 200+ Defendant Healthcare Workers.  Absent facts demonstrating that specific healthcare workers possessed such awareness, plaintiff's

allegations concerning their deliberate indifference is purely speculative and does not permit the requisite inference regarding what any particular defendant "knew or should have known" regarding his medical treatment.  <u>Charles</u>, 925 F.3d at 87.

Indeed, even if plaintiff had alleged such facts, it is far from  clear that a 5-day delay in changing plaintiff's ileostomy bag would rise to the level of a constitutional violation.  <u>See Demata v. New York State Corr. Dep't of Health Servs.</u>, 198 F.3d 233 (2d Cir. 1999) ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment.").[25]  The Court accordingly dismisses plaintiff's deliberate indifference claim against Marianna Ustiak, Landis Barnes, and any other Defendant Healthcare Worker insofar as it is premised on the alleged failures to change plaintiff's ileostomy bag with greater frequency.

### ii.    Todd Cowdery, MD

Plaintiff alleges that Dr. Todd Cowdery "[mis]diagnosed the bumps around Plaintiff's stomach as a condition known as Pyoderma-

---

[25] <u>See also Whitfield v. O'Connell</u>, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *7 (S.D.N.Y. Mar. 18, 2010), <u>aff'd,</u> 402 F. App'x 563 (2d Cir. 2010). ("Even if, as [plaintiff] alleges, basic medical procedure required [the defendants] to 'take appropriate additional steps' . . . this is at most negligence, not deliberate indifference."); <u>cf. Ayala v. Terhune</u>, 195 F. App'x 87, 91 (3d Cir. 2006) ("Although the defendants may have failed to provide a new colostomy bag to [plaintiff] on occasion, at best, their failure amounts to negligence, not deliberate indifference.").

Gangrenosum" and that plaintiff was prescribed an antibiotic and increased pain medication as a result of Dr. Cowdery's misdiagnosis. FAC ¶ 77. Plaintiff does not, however, allege facts suggesting that the misdiagnosis was intentional or reckless, or that Dr. Cowdery somehow should have known that his misdiagnosis and associated treatment would cause plaintiff to suffer serious pain. To the extent plaintiff is alleging that Dr. Cowdery's' misdiagnosis was negligent, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," Estelle v. Gamble, 429 U.S. 97, 106 (1976), precisely because "allegations of negligent misdiagnosis . . . do not suggest that the defendant acted with a conscious disregard to inmate health or safety," Williams v. Williams, No. 13 Civ. 3154 (RA), 2015 WL 568842, at *7 (S.D.N.Y. Feb. 11, 2015).[26]

---

[26] Plaintiff claims to have been "denied his right to be examined by a specialist," ECF No. 63 at 20, and repeatedly suggests that his misdiagnoses were a function of his being seen by "non-specialist doctors unable to correctly diagnose Plaintiff's condition." See, e.g., ECF No. 63 at 13. However, any claim premised upon a failure to have been seen by a specialist reflects, at most, disagreement over proper treatment and does not rise to the level of a constitutional violation. See Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques[,] . . . . or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim")(emphasis added). See also Chance, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim"); cf. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls.").

Plaintiff's claim for deliberate indifference against Dr. Cowdery is accordingly dismissed.

### iii.    Gloria Ihenacho, MD, Robert Reader, MD, and Patricio B. Lynn, MD

With respect to plaintiff's allegation that defendants Gloria Ihenacho, MD, Robert Reader, MD, "and/or" Patricio B. Lynn, MD, attempted to "push [plaintiff's] mucous fistula back into his stomach with his/her hands . . . caus[ing] Plaintiff extreme pain and discomfort," FAC ¶ 71, plaintiff offers no suggestion that these defendants "acted with a sufficiently culpable state of mind." Grimmett, 2017 WL 2274485, at *4.   To the contrary, plaintiff suggests that the purported mistreatment was a function of the defendants having "little to no experience regarding Plaintiff's condition." FAC ¶ 71.  If anything, lack of experience cuts against a finding that any of these defendants "act[ed] or fail[ed] to act under circumstances in which [they] knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result." Feliciano v. Anderson, No. 15 Civ. 4106 (LTS), 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017).

Plaintiff accordingly has failed to state a deliberate indifference claim against these defendants.

### iv.    Additional Defendant Healthcare Workers

Finally, the Court notes that a number of the individually named Defendant Healthcare Workers, including, but not limited to,

Grace Oh, MD, Michael Shen, MD, Andrew Capsopoulos and Anna Barrios, are not even included among the defendants alleged to have inadequately treated plaintiff. Rather, they are named only once in the amended complaint in a multi-page paragraph that lists each and every one of the 200+ Defendant Healthcare Workers. See FAC ¶ 37. Plaintiff's claims against these defendants, and all others against whom claims are alleged solely on a group-wide basis, see supra at 14-15, must be dismissed for failure to plead personal involvement. See King v. Falco, No. 16 Civ. 6315 (VB), 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (claims "must be dismissed for plaintiff's failure to plead [the defendant's] personal involvement" where plaintiff had "include[d] [the defendant's] name in the case caption but fail[ed] to make any substantive allegations against her in the body of the complaint").

*          *          *

For the foregoing reasons, plaintiff has failed to state a claim against any of the 200+ Defendant Healthcare Workers. Plaintiff's deliberate indifference claim against those defendants is accordingly dismissed.

### 4.   Deliberate Indifference Claim against "Senior Officials"

Plaintiff's claims against defendants Commissioner Brann, MDC Warden Moses, BPW Warden Joe Doe and NIC Warden John Doe (the "Senior Officials") are based solely on a theory of supervisory

liability.  See, e.g., FAC ¶ 36 ("Defendants Commissioner Brann,
MDC Warden Moses, BPW Warden Doe and NIC Warden Doe . . . were, at
all times relevant hereto, senior officials who exercised
policymaking, supervisory, and disciplinary authority on behalf
DOC"); ECF No. 63 at 32 ("DOC and its supervisory officials were
the gateway to Plaintiff obtaining medical examinations and
treatment, as without their approval and collaboration, Plaintiff
could not be transported to and/or examined at any emergency care
center, clinic, hospital, or specialist.").  However, "[i]t is
well settled in this Circuit that personal involvement of
defendants in alleged constitutional deprivations is a
prerequisite to an award of damages under § 1983," Farrell v.
Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith,
21 F.3d 496, 501 (2d Cir. 1994)), and that an individual
accordingly cannot be liable for damages under § 1983 "merely
because he held a high position of authority," Black v. Coughlin,
76 F.3d 72, 74 (2d Cir. 1996).  Rather, "a plaintiff must establish
a given defendant's personal involvement in the claimed
violation." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 229
(2d Cir. 2004).  Specifically, a plaintiff must allege with respect
to a supervisory official that:

> (1) [he or she] participated directly in the alleged
> constitutional violation, (2) [he or she], after being
> informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) [he or she] created a policy or
> custom under which unconstitutional practices occurred, or

> allowed the continuance of such a policy or custom, (4) [he
> or she] was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) [he or she] exhibited
> deliberate indifference to the rights of inmates by failing
> to act on information indicating that unconstitutional acts
> were occurring.

Brandon v. Kinter, 938 F.3d 21, 36–37 (2d Cir. 2019) (quoting Colon

v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).  In practice, this

means that "[t]he bare fact that [a defendant] occupies a high

position in the New York prison hierarchy is insufficient to

sustain [a plaintiff's] claim." Colon, 58 F.3d at 874.

Here, plaintiff has failed to proffer any facts demonstrating

the Senior Officials' personal involvement.[27]  For example, the

FAC, while long on high level descriptions of Commissioner Brann's

job responsibilities, is wholly devoid of allegations supporting

an inference that Commissioner Brann directly participated in,

authorized, or was ever even made aware of the deprivations

alleged.  See, e.g., FAC ¶¶ 27, 28 (detailing Commissioner Brann's

responsibilities as outlined in the New York City Charter); FAC ¶

29 (alleging that, as DOC Commissioner, Commissioner Brann was

responsible for "the drafting, promulgation and implementation of

DOC policies, practices and directives; the training, supervision,

promotion, demotion, discipline and conduct of all DOC personnel,

---

[27] While the Second Circuit "ha[s] observed that Iqbal may have heightened the requirements for supervisory liability by requiring more direct personal involvement," that issue need not be addressed "where, as here, the allegations are also insufficient to state a claim under Colon." Lombardo v. Graham, 807 F. App'x 120, 124 n.1 (2d Cir. 2020).

. . . the custody, control and care of all prisoners confined to the City's jails and hospital prison wards; and the enforcement of DOC rules and ensuring that DOC personnel obey the laws of the United States, the State of New York, and the City of New York"). Similarly, the FAC recites in general terms MDC Warden Moses's supervisory responsibilities, see FAC ¶ 30 (describing his responsibility for "the care, custody, and control of all inmates, as well as the supervision of all staff in MDC"), but does not contain a single, non-conclusory allegation regarding his involvement in or knowledge of the purported violations. BPW Warden Joe Doe and NIC Warden John Doe likewise appear to be named in the FAC solely because of their general responsibility for "the care, custody, and control of all inmates, as well as the supervision of all staff" at their respective facilities, see FAC ¶¶ 31, 35, but the complaint lacks allegations suggesting that either had direct involvement in, supervised, or were otherwise informed of the purported deprivations.

While plaintiff proffers conclusory and formulaic allegations that the Senior Officials "created or allowed the continuance of [a] custom under which inmates were illegally and excessively deprived of access to adequate medical care," FAC ¶ 125, boilerplate allegations of that nature are insufficient to state a claim. See, e.g., McNair v. Ponte, No. 16 Civ. 1722 (LAP), 2019 WL 1428349, at *9 (S.D.N.Y. Mar. 29, 2019) ("[P]laintiff's claim

that the Supervisory Defendants 'created' the alleged D.O.C.
customs or policies under which unconstitutional practices
occurred . . . fails because 'it merely alleges a legal conclusion
and thus fails as a matter of law'") (quoting <u>Lara-Grimaldi v.</u>
<u>Cty. of Putnam</u>, No. 17 Civ. 622 (KMK), 2018 WL 1626348, at *12 n.9
(S.D.N.Y. Mar. 29, 2018)); <u>see also</u> <u>Koehl v. Bernstein</u>, No. 10
Civ. 3808 (SHS) (GWG), 2011 WL 2436817, at *19 (S.D.N.Y. June 17,
2011), <u>report and recommendation adopted,</u> No. 10 Civ. 3808 (SHS),
2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011) ("[C]onclusory
allegations that a defendant was involved in the creation and
enforcement of unconstitutional policies cannot sustain a claim of
personal involvement.").

In short, plaintiff's allegations concerning the "Senior
Officer" defendants fail to provide a sufficient basis for
subjecting them to liability under § 1983 and accordingly are
dismissed.

### 5.   Deliberate Indifference Claim against MDC Captains Winwick, Lee and Avin and John/Jane Does #1-25

Plaintiff has failed to allege that MDC Captain Winwick, MDC
Captain Lee, or MDC Captain Avin actually deprived him of adequate

medical care, much less that those defendants were deliberately indifferent to plaintiff's serious medical needs.[28]

The FAC alleges that Captain Winwick ignored plaintiff's "numerous pleas" for his mother to bring him ileostomy supplies. FAC ¶ 60. The FAC goes on to allege, however, that Captain Winwick assured Plaintiff that she would raise plaintiff's request with the "Assistant Warden," and that plaintiff's mother ultimately *was* permitted to bring plaintiff the requested supplies. FAC ¶ 62. These facts fail to raise an inference, as plaintiff argues in opposition, that "Captain Winwick was made aware of Plaintiff's medical condition and knew that he required medical assistance, but willfully chose to ignore Plaintiff's pleas and caused Plaintiff's condition deteriorate [*sic*] for two weeks and leaving him to deal with excruciating pain as a result of the fecal matter pouring over the painful lesions he developed." ECF No. 63 at 30. To the contrary, plaintiff has failed to proffer any non-conclusory facts suggesting that Captain Winwick -- a corrections official undoubtedly untrained to identify medical need -- was actually aware that plaintiff had developed a painful skin condition for which additional ileostomy supplies were needed. Nor does the

---

[28] While non-medical personnel may be found to have engaged in deliberate indifference, "a plaintiff must 'prove that [nonmedical] prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment.'" Roundtree v. City of New York, No. 15 Civ. 8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) (quoting Hodge v. Coughlin, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994)).

amended complaint plead facts suggesting that there was a ready supply of ileostomy bags that Captain Winwick or any of the other MDC Captains or Defendant Healthcare Workers consciously withheld. Absent such circumstances, the fact that plaintiff may have complained repeatedly to Captain Winwick of his need for additional supplies does not suffice to make out a claim for deliberate indifference.  Cf. Roundtree, 2018 WL 1586473, at *10 ("While [plaintiff] may have complained repeatedly about his [medical condition], the Complaint fails to allege that Defendants expressly refused to treat him and that his requests for treatment were rejected for an invalid reason or to punish him.").[29]

Plaintiff separately alleges that "Captains Lee and Avin failed to take Plaintiff to his appointments at Bellevue Hospital, completely disregarding the orders from MDC's doctors."  ECF No. 63 at 29-30; see also FAC ¶ 93 ("Plaintiff's transfer [to NIC] was affected because the MDC Defendants, including but not limited to MDC Captain Avin, were unable to transport Plaintiff to BPW for his doctor's appointments, despite a duty to do so.").  For one, general allegations regarding the MDC Captains' collective or individual involvement in cancelling or delaying plaintiff's

---

[29] Plaintiff maintains that he "requires further discovery including deposition testimony to ascertain the substance of the conversation between Captain Winwick and the Wardens of the MDC with regards to Plaintiff's condition."  ECF No. 63 at 32.  Discovery is not warranted, however, where, as here, it would amount to a "fishing expedition for evidence in search of a theory that has yet to be asserted."  In re Alper Holdings USA, Inc., 398 B.R. 736, 754 (S.D.N.Y. 2008).

appointments or otherwise impeding his ability to obtain treatment, without any factual allegations supporting when or why the appointments were cancelled or delayed, are insufficient to state a claim.[30]  Nor can such allegations plausibly be squared with a medical record documenting numerous medical appointments and treatments during the period in question.

While plaintiff maintains that his medical records show that plaintiff had made several "311 complaints" to Captains Winwick, Lee and Avin and thus that the Captains were on notice of his condition and his need for medical treatment, see ECF No. 63 at 31, the medical records do not even contain a reference to Captain Winwick, and the references to Captains Avin and Lee have nothing to do with the specific claims asserted against them.  The reference to Captain Avin states only that Captain Avin had notified a medical provider of plaintiff's 311 complaint concerning his not having been transferred to *NIC* (not BPW), and in any event contains no suggestion that Captain Avin was aware of and disregarded risks associated with his underlying medical condition.  See ECF No. 58, Ex. B at 231 ("Captain Avin came and

---

[30] The Court regards with some skepticism plaintiff's attempts to add greater specificity to his claims against the MDC Captains in his opposition. For example, whereas the FAC states only that plaintiff was *referred* to BPW on February 21, 2018, plaintiff's opposition to defendants' motion to dismiss appears to presume that plaintiff actually had an appointment at BPW on February 21, 2018 and that "MDC Personnel, including Defendant Captains Winwick, Lee, and/or Avin, failed to take Plaintiff to BPW at the appointment time and caused Plaintiff to miss his appointment."  ECF No. 63 at 12.

notified me this [patient] had 311 complaint because, despite DOC being given sevl dispos [*sic*] never went to NIC."). Similarly with respect to Captain Lee, a progress note from October 24, 2018 states that "client filed a 311 complaint with DOC" and that "DOC Capt Lee was looking for some dates regarding BVH Clinic appointment as part of the 311 complaint investigation." See ECF No. 58, Ex. B at 269. The reference to Captain Lee indicates, if anything, that Captain Lee was involved in investigating and attempting to resolve plaintiff's complaints.

Plaintiff's claims against DOC Officers John/Jane Does #1-25 (referred to collectively as the "Defendant Officers"), which rely entirely on group pleading, fare no better. See, e.g., FAC ¶ 64 (alleging that "Defendant Officers and Defendant Healthcare Workers kept cancelling Plaintiff's hospital appointments for no legitimate or lawful reason"). Bare allegations that groups of defendants failed on multiple occasions to take plaintiff to appointments "for no legitimate or lawful reason," do not suffice.

In summary, plaintiff has not pled a sufficiently serious medical condition that was met with deliberate indifference by the MDC Captains or by the John/Jane Doe Defendants, and plaintiff's claims against those defendants accordingly are dismissed.

\*          \*          \*

While the wide-ranging and ill-defined nature of plaintiff's claims against various groups and subgroups of defendants,

41

discussed supra, have made it difficult for the Court to address each and every one of plaintiff's allegations, the FAC broadly alleges claims arising from: (i) the failure of named and unnamed Defendant Healthcare Workers to change plaintiff's ileostomy bag with sufficient frequency; (ii) the failures of certain MDC personnel to take plaintiff to his medical appointments, resulting in delayed treatments; and (iii) the failure of certain defendants to ensure that plaintiff was examined in a timely manner by specialists, which purportedly resulted in, inter alia, plaintiff's skin condition being misdiagnosed.

Certain of plaintiff's allegations may well support a claim for negligence. However, and particularly in light of the amount of documented medical care that plaintiff received in connection with his Hirschsprung's disease, the allegations plainly do not amount to a constitutional violation supporting a claim for deliberate indifference under § 1983. Cf. Vassallo, 2016 WL 6902478, at *11 ("At bottom, the FAC alleges that this care was inadequate because it was characterized by delay, irregularity, misdiagnoses, and suboptimal treatment options, but these allegations do not rise to the level of a constitutional violation"); see also Chance, 143 F.3d at 703 ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.").

Defendants' motion to dismiss plaintiff's § 1983 claim for deliberate indifference accordingly is granted.

### B.   Monell

"To state a § 1983 claim against a municipality, the plaintiff must allege that an officially adopted policy or custom caused his injury." Ferguson v. Cai, No. 11 Civ. 6181 (PAE), 2012 WL 2865474, at *5 (S.D.N.Y. July 12, 2012); see also Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ("To hold a municipality liable [under Monell], 'a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right'") (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).  Conclusory allegations regarding alleged customs or practices are insufficient.

Plaintiff attempts to assert a Monell claim against the City and HHC based upon defendants' purported policies of, inter alia: (i) "refusing to provide Plaintiff with adequate ileostomy supplies," FAC ¶ 136; and (ii) "refusing to allow individuals to be admitted to a hospital and/or receive ileostomy supplies pending hospital admission," FAC ¶ 137.  However, the amended complaint alleges only that plaintiff did not receive ileostomy supplies on the several occasions in which the supplies were out of stock. The amended complaint is devoid of facts suggesting that defendants ever "refused" to provide plaintiff -- or any other inmate --

ileostomy supplies to the extent they were available.   The existence of the purported policies accordingly is not supported by the facts alleged, and "[t]o state there is a policy does not make it so."   Betts v. Shearman, No. 12 Civ. 3195 (JPO), 2013 WL 311124, at *16 (S.D.N.Y. Jan. 24, 2013), aff'd, 751 F.3d 78 (2d Cir. 2014).

To the extent plaintiff has attempted to assert a Monell violation under a failure to train or supervise theory, see FAC ¶ 158, ECF No. 63 at 34-35, his allegations are boilerplate and strictly conclusory, and the "existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff." Santos v. New York City, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012).

In any event, having found no underlying constitutional violation, without which there can be no municipal liability under Section 1983, see City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986), the Court need not even address plaintiff's various arguments related to the City's and HHC's liability under Monell.  See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct"); Ferguson, 2012 WL 2865474, at *6 ("Because the Court has concluded that [the plaintiff's] constitutional rights have

not been violated, his claim of municipal liability pursuant to Monell is, a fortiori, also meritless.").

Plaintiff's Monell claim accordingly is dismissed.

## C. Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (quoting Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993)).

Plaintiff's attempt to state a conspiracy claim fails to multiple reasons. First, even assuming plaintiff had alleged a constitutional violation, plaintiff's conspiracy allegations are strictly conclusory. See, e.g., FAC ¶ 161 (alleging that the individual defendants "willfully conspired with one another to deprive Plaintiff of his constitutional rights"); FAC ¶ 163 (alleging that the individual defendants "had knowledge that a conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing, and neglected or

refused to do so"). Where, as here, a plaintiff "has not provided any 'details of time and place' and has 'fail[ed] to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense,' . . . his § 1983 conspiracy claim must be dismissed." Ciambriello v. Cty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (first quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993); then quoting Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977)).

Plaintiff also failed to oppose dismissal of his conspiracy claim in his opposition to defendants' motion to dismiss, permitting the Court to deem that claim abandoned. See Wilkov v. Ameriprise Fin. Servs., Inc., 753 F. App'x 44, 47 n.1 (2d Cir. 2018) (affirming dismissal of claims "on the ground that they were 'abandoned' by [the plaintiff] when she failed to oppose them in her opposition to [the defendant's] motion to dismiss"); Lipton v. Cty. of Orange, NY, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

For each of these reasons, plaintiff's conspiracy claim is dismissed.

### D.   State Law Claims

The Second Circuit has "generally held that where all federal claims have been dismissed at a relatively early stage, the

district court should decline to exercise supplemental jurisdiction over pendent state-law claims." Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC, 414 F. App'x 334, 337 (2d Cir. 2011); see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Having dismissed all of plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over plaintiff's pendant state law claims.

### E.   Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir.1993) (per curiam). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

Plaintiff previously was afforded an opportunity to amend his initial complaint. Even with the benefit of his full set of

medical records, plaintiff has failed to allege facts sufficient to support an inference that any of the numerous healthcare workers or officers acted with the requisite deliberate indifference. While plaintiff suggests in his opposition that he will be able to cure any deficiencies with information obtained through discovery, see ECF No. 63 at 21, "it is axiomatic that a plaintiff must state a claim *before* he is entitled to discovery." Bristol-Myers Squibb Co. v. Matrix Labs. Ltd., No. 12 Civ. 5846 (PAE), 2015 WL 4430614, at *8 (S.D.N.Y. July 20, 2015) (emphasis in original).[31]  Having received over one thousand pages of medical records at the Court's direction, plaintiff has if anything had more "discovery" than is available in most cases and yet has still been unable to plead a sustainable cause of action that rises to the level of a constitutional violation.

Because the Court finds that any effort to replead would be futile, plaintiff's request for leave to amend is denied.  See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (repleading would be futile where plaintiff's complaint did not "suggest[]

---

[31] Moreover, "[d]iscovery is 'not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'"  Lituma v. United States, No. 04 Civ. 8955 (NRB), 2005 WL 1705088, at *2 (S.D.N.Y. July 18, 2005) (quoting Cleveland-Goins v. City of New York, No. 99 Civ. 1109 (AGS), 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999)); see also KBL Corp., 646 F. Supp. 2d at 346  ("[A]llowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to 'streamline[ ] litigation by dispensing with needless discovery and factfinding" where the plaintiff has failed to state a claim under the law'") (quoting Neitzke v. Williams, 490 U.S. 319, 319 (1989)).

that the plaintiff ha[d] a claim that she ha[d] inadequately or inartfully pleaded").

**V.   Conclusion**

For the foregoing reasons, defendants' motion to dismiss is granted in its entirety.  Plaintiff's state law claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 55, and to close the case.

**SO ORDERED.**

Dated:   New York, New York
         August 20, 2020

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

49